NOT FOR PUBLICATION (Doc. No. 6)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
MICHAEL APICELLA and ROXANNE :
APICELLA, :
 :
      Plaintiffs, : Civil No. 10-02936 (RBK/JS)
 :
      v. : **OPINION**
 :
ENCOMPASS INSURANCE COMPANY :
OF NEW JERSEY, :
 :
      Defendant. :
_____:

**KUGLER**, United States District Judge:

      This matter arises out of a settlement agreement between Plaintiffs Michael and Roxanne Apicella and Defendant Encompass Insurance Company of New Jersey ("Encompass") regarding an insurance coverage dispute. Plaintiffs' claims stem from Defendant's alleged failure to perform its obligations under the settlement agreement. Presently before the Court is Defendant's motion pursuant to Rule 12(b)(6) to dismiss Plaintiffs' claim for violations of the New Jersey Consumer Fraud Act ("NJCFA") and Plaintiffs' request for punitive damages based on their claim for bad-faith failure to pay insurance proceeds. Because Plaintiffs voluntarily dismissed their NJCFA claim, the Court denies that portion of Defendant's motion as moot. Because Plaintiffs fail to allege facts warranting punitive damages, the Court grants Defendant's motion to dismiss Plaintiffs' request for punitive damages.

      **I.**      **BACKGROUND**

      On February 13, 2008, there was a discharge of water from the third-floor bathroom of a residential property ("the property"), which the Plaintiffs own as a rental property. At the time

of the incident, Plaintiffs held a policy of homeowner's insurance issued by Defendant.  They made a claim under the policy for damages to the property totaling more than $100,000.

In June 2008, Defendant issued a check in the amount of $16,258.14, for the emergency remediation  portion of the claim, and, in August 2008, Defendant issued another payment of $33,988.20 for the rest of the claim.  Defendant then closed the claim and did not make any further payments.  Plaintiffs then filed a complaint against Defendant in the U.S. District Court, District of New Jersey (09-cv-722), alleging that additional amounts were due under the policy.  The lawsuit was resolved by way of a settlement agreement, in which it was agreed that outstanding amounts due on Plaintiffs' insurance claim would be resolved by appointed appraisers.  Two subsections, paragraph one and paragraph three, of the settlement agreement are pertinent to this matter.  Paragraph one reads, "the parties agree that they will request their respective appraisers to exercise their best efforts to complete the appraisal process in an expeditious manner.  Encompass agrees that, in the event of an award pursuant to Appraisal, it will issue any payment thereof by check payable jointly to Apicella and Weinstein & Associates, their attorneys."  (Pl.'s Compl. ¶ 23).  Paragraph three states, "the parties acknowledge that Apicella asserted a claim for payment of fair rental value under the Policy which was denied by Encompass.  Notwithstanding that prior denial, Encompass agrees to submit the issue of Apicella's entitlement of fair rental value benefits, and/or the amount thereof, if any, to the Appraisal process referred to above."  (Pl.'s Compl. ¶ 24).

Plaintiffs allege that following the settlement, for the next five months, the Defendant failed to notify their appraiser that he was hired to appraise the claim for the fair rental loss.  Defendant finally notified the appraiser in November 2009.  In March 2010, Plaintiffs received an award in the amount of $72,382.44 for the actual cash value of the loss; the award further

stated that Defendant would pay the loss in rent sustained by Plaintiffs. In April 2010, Defendant issued a check in the amount of $38,394.18[1] payable to "Michael Apicella and Gene's Gen. Contracting and Country Wide Home Loans and Weinstein & Associates." (Pl.'s Compl. ¶ 57).

Plaintiffs initiated this action after receiving the $38,394.18 check from Defendant. They allege that under the settlement agreement, the check should have been made payable only to Plaintiffs and their counsel. Plaintiffs further allege that the appraiser selected by Defendant failed to consider Plaintiffs' fair rental claim in a timely manner and that Defendant failed to pay such claim. Plaintiffs claim that Defendant breached the insurance policy and settlement agreement. They request punitive and consequential damages for Defendant's bad-faith failure to pay insurance proceeds. They also allege that Defendant's actions were in violation of the NJCFA. Defendant now moves to dismiss Plaintiffs' NJCFA claim and their request for punitive damages for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). After Defendant made its motion, the parties filed a stipulation dismissing the NJCFA claim without prejudice. Thus, the only issue presently before this Court is whether Plaintiffs have sufficiently pled a right to recover punitive damages based on their claim for bad-faith failure to pay insurance proceeds.

## II.     STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

---

[1] In addition to the previous payment of $33,988.20, the total amount paid to Plaintiffs was $72,383.38, not including the emergency remediation payment.

to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

### III. DISCUSSION

The New Jersey Supreme Court recognizes a cause of action for bad-faith failure to pay an insured's claim when no debatable reason exists for denying the claim and the economic losses sustained by the policyholder are within the contemplation of the insurance company. Pickett v. Lloyd's, 621 A.2d 445, 447 (N.J. 1993). To establish a bad-faith claim for failure to pay insurance proceeds, a plaintiff must show the absence of a reasonable basis for denying benefits under the policy and the defendant's knowledge of or reckless disregard for the lack of a reasonable basis for failing to pay the claim. Id. at 453 (citing Anderson v. Continental Ins. Co., 271 N.W. 2d 368, 376-77 (Wis. 1978)). The obligation to act in good-faith requires a party to

act consistent with principles of equity and fair dealing.  Id. at 450 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 323 A.2d 495 (N.J. 1974)).

The bad-faith cause of action developed by the New Jersey Supreme Court does not allow a right to recover for punitive damages absent egregious circumstances.  Id. at 455.  To sustain a claim for punitive damages, a plaintiff must to show something more than a breach of the good-faith obligation.  Id.; see Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224 (N.J. 1984) (holding there must be circumstances of aggravation or outrage, such as spite or malice, or a fraudulent or evil motive on the part of the defendant in order to sustain a claim for punitive damages).  The wrong must be inflicted under circumstances of aggravation, insult, cruelty, vindictiveness or malice before an award of punitive damages is permissible.  Pickett v. Lloyd's, 621 A.2d 445, 455 (N.J. 1993) (citing Farr v. Transamerica Occidental Life Ins. Co., 699 P.2d 376, 382 (Ariz. Ct. App. 1984)).

In Farr, the plaintiff experienced complications during the gestation and birth of her sixth child.  Id. at 378.  She made a claim with her medical insurance company for coverage related to the complications.  Id.  The insurance company did not acknowledge the complications and refused to pay any amount beyond the standard payment for childbirth.  Id. at 379.  The plaintiff brought an action against the insurance company for a bad-faith claim for failure to pay insurance proceeds.  Id. at 380.  The jury awarded plaintiff compensatory and punitive damages.  Id. at 378.  However, the trial court vacated the award for punitive damages, ruling that before punitive damages for a bad-faith claim would be awarded, an insured must present evidence that reflected something more than recklessness by the insurer.[2]  Id. at 383.

---

[2] This does not mean that carriers are insulated from liability for independent torts committed in the course of conducting their business.  New Jersey Courts recognize that really intolerable conduct that is outrageous in character, such as threats by the insurer's agents to kill the insured and the insured's children, may sustain an independent cause of action upon which punitive damages may be recoverable.  Pickett, 621 A.2d at 455.  Here, Plaintiffs do not assert an independent tort aside from the bad-faith claim.  Therefore, the Court need not address whether Plaintiffs are entitled to punitive damages under an independent tort theory.

Here, Plaintiffs request punitive damages based on their claim of bad-faith refusal to pay insurance proceeds.  Plaintiffs allege that Defendant failed to make the settlement check payable only to Plaintiffs and their counsel, that Defendant's appraiser failed to consider the fair rental claim in a timely manner, and Defendant failed to pay such claim.  Plaintiffs further allege that Defendant breached the insurance policy and settlement agreement.  Although those allegations may support an award for bad-faith, in order to receive punitive damages, Plaintiffs must allege more than a breach of the good-faith obligation to act consistent with principles of equity and fair dealing.  Plaintiffs must allege egregious circumstances such as aggravation, insult, cruelty, vindictiveness or malice.  See Farr, 699 P.2d at 382.  Plaintiffs do not allege any such circumstances.  Accordingly, Defendant's motion to dismiss Plaintiffs' request for punitive damages is granted.

### IV.     CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiffs' request for punitive damages.  Because Plaintiffs voluntarily dismissed their NJCFA claim, the Court denies that portion of Defendant's motion as moot.  An appropriate order shall enter today.


Dated:    3-2-11                                                                          /s/ Robert B. Kugler
                                                                                                             ROBERT B. KUGLER
                                                                                                             United States District Judge